# OFFICE OF
# THE ATTORNEY GENERAL

Gerald C. Mann

Honorable George H. Shepperd
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-3905
Re: Whether motor carriers operating under both a specialized motor carrier's certificate and a contract carrier's permit are exempt from the payment of the gross receipts tax imposed by Article XIV, House Bill 8, 47th Legislature.

Permit us to quote your recent letter requesting a legal opinion from this department. It reads:

"Article XIV of House Bill No. 8 of the Forty-seventh Legislature provides a tax of 2.2% on receipts earned by Motor Contract Carriers, and provides in part as follows:

"'Provided, however, carriers of persons or property who are required to pay an intangible assets tax under the laws of this State, are hereby exempted from the provisions of this Article of this Act.'

"Also, Article XIII of House Bill No. 8 of the Forty-seventh Legislature provides for a tax on intangible assets of Motor Carriers operating under permits from the Railroad Commission which includes Motor Carriers operating under a specialized permit and in some instances Motor Carriers operating under both a specialized carriers permit also contract carriers permit. It is my understanding that where they operate strictly under a contract carriers permit they are not subject to the intangible tax but are liable for gross receipts tax as provided for in Article XIV. Where Motor Carriers operate under both types of permits, please tell me if, in your opinion, the exemption in Article XIV as above quoted will exempt the operators under a contract carriers permit from paying gross receipts tax where they are also operating under a specialized permit and liable for the intangible tax."

In Opinion No. O-3546 this department held that the holder of a contract carrier permit is subject to the gross

receipts tax imposed by Article XIV, House Bill 8, 47th Legislature.

In Opinion No. O-3700 this department held that the holder of a specialized motor carrier's certificate, issued pursuant to House Bill No. 351, 47th Legislature, is liable for the intangible assets tax imposed by Article XIII, House Bill 8, and is exempt from the gross receipts tax imposed by Article XIV, House Bill 8.

You pose the question of the liability of a motor carrier operating under both types of licenses.

As pertinent, Article XIII of House Bill 8 reads:

". . . and each 'common carrier motor carrier' operating under certificates of convenience and necessity issued by the Railroad Commission of Texas . . . shall pay an annual tax to the State, beginning with the first day of January of each year, on their intangible assets and property. . . ."

As pertinent, Article XIV of House Bill 8 reads:

"Each individual, partnership, company, association, or corporation doing business as . . . 'motor carrier' or 'contract carrier' . . . shall pay to the State Treasurer an occupation tax for the quarter beginning on said date equal to two and two-tenths (2.2) per cent of said gross receipts as shown by said report. Provided, however, carriers of persons or property who are required to pay an intangible assets tax under the laws of this State, are hereby exempted from the provisions of this Article of this Act. . . ."

The gross receipts tax levied by Article XIV is of course more onerous than the intangible assets tax.

No express provision is made regarding the situation under review. The answer to your question must therefore rest in construction.

It is at once manifest that if the exemption contained in Article XIV is given a strict and literal effect, the holder of a contract carrier's permit would escape the gross receipts tax, by virtue of the acquisition of a specialized motor carrier's certificate.

Moreover, it is obvious that Article XIII was intended to tax operations under certificates of convenience and necessity issued by the Railroad Commission, not under contract

carrier permits; whereas, Article XIV was intended to tax contract carrier permit business. The exemption contained in Article XIV was intended, we believe, to constitute an "Operations" exemption and not "an individual or company" exemption in relation to the situation under review. It was simply designed, insofar as the question at hand is concerned, to prevent one entity from being taxed both under Article XIII and Article XIV because of the same operations or business.

No just or plausible reason exists why contract carrier operations standing alone should be liable for the gross receipts tax, whereas, if the contract carrier procures a specialized motor carrier's certificate the contract carrier business should be exempt therefrom. We do not believe that the Legislature intended that such should be so. There is no reason to believe that the Legislature intended to encourage the acquisition of specialized motor carrier certificates in connection with contract carrier permits.

We have considered the construction which would hold that the possessor of both licenses would be entirely exempt from the gross receipts tax imposed by Article XIV and liable for the intangible assets ta x imposed by Article XIII under both the specialized motor carrier certificate and the contract carrier permit. We reject this construction, first, because it would tax an operation, by way of intangible assets, not contemplated by the provisions of Article XIII; and second, because there would result a discrimination between the holder of a contract carrier permit, only, and the holder of both a specialized motor carrier certificate and a contract carrier permit. The validity of such a classification would be doubtful.

We also reject a third possible construction; namely, that the holder of both licenses would be entirely exempt from both the gross receipts tax and the intangible assets tax upon his contract carrier operations and would be liable only for the intangible assets tax upon his specialized motor carrier certificate operations. This clearly could not have been the legislative intent and would represent a discrimination not compelled by the language employed and of questionable validity.

Our conclusions find substantial support in the case of Hurt v. Cooper, 110 S. W. (2d) 896. The opinion is by Judge Hickman of the Commission of Appeals, adopted by the Supreme Court. In this case the court considered the exemptions provided in Section 5 of the Chain Store Tax Law as follows:

"Provided that the terms, 'store, stores, mercantile establishment or mercantile establishments' wherever used in this Act shall not include (1) wholesale and/or retail lumber and building material businesses engaged exclusively in the sale of lumber and

building materials; (2) and/or oil and gas well supplies and equipment dealers ...." (Parenthetical insertions by the Court)

With especial reference to the exemption designated as (2), above, the court said at page 904:

"The exemption of oil and gas well supply dealers is expressed in broad terms. Literally it seems to state that the exemption is not alone to businesses dealing in certain commodities, but is one personal to the dealers. However, it is reasonably susceptible of the construction that it covers only the oil and gas well supply business and that persons engaged in that business are not exempted when engaged in other taxed businesses. It is our duty to give it that construction in passing upon its validity." (Emphasis ours)

With respect to another phase of the case before it, the court declared at page 905:

"The least that can be said is that the language is reasonably susceptible of the construction which we have given it. That construction upholds the act and should, therefore, be applied rather than one which might invalidate it."

It is therefore the opinion of this department that where ownership of a specialized motor carrier's certificate and a contract carrier's permit exists in one person, or company, or corporation, or association, or partnership, the intangible assets tax imposed by Article XIII of House Bill 8 should be collected upon the former operations, and the gross receipts tax imposed by Article XIV of House Bill 8 should be collected upon the contract carrier business.

Opinion No. O-3700 by this department did not involve the question we are considering in this opinion. Any statement in Opinion No. O-3700 contrary to the conclusions we have reached in this opinion are hereby restricted to such extent.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By (Signed)
Zollie C. Steakley
Assistant

APPROVED DEC. 12, 1941
(Signed) Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

This opinion considered and approved in limited conference

APPROVED OPINION COMMITTEE By B.W.B. Chairman.